Thank you. Please call the first case. Case number 5-12-0143, Consolidated Coal Company v. Workers' Compensation Comm'n. Counsel, you may proceed. Good morning. Morning. May it please the Court, Mr. Dunham. My name is Carolyn Tobiah. I'm here on behalf of Consolidated Coal Company. There were two issues that were appealed to this Court, one involving jurisdiction, the second dealing with the Commission's related benefits. For the purposes of my argument, I'm simply going to be addressing jurisdiction unless your Honors have a question about the Commission's award of benefits on the Occupational Disease Part. In this case, Mr. Yanez worked for Consolidated Coal Company beginning in October of 1978. He was laid off, recalled in Illinois until July 8, 2002 when the mine closed and he was laid off for the last time in Illinois. This was the last date that he worked as a coal miner in Illinois. After the layoff, he filled out panel recall forms and got recalled to Utah in 2003 where he worked from February to October and he was laid off again. He then filled out another panel recall form and eventually he gets a phone call in February of 2004 advising of openings at the West Virginia mine called Loveridge. He's advised that there are numerous things that need to be done before West Virginia, including getting a physical. He takes the physical, that takes place in Illinois. He gets another phone call that says, okay, you passed your physical. There are six more things that you need to do. Namely, you need to come to West Virginia. You need to have a current federal electrician's card because that was the job that he had. He had to have a state approved electrician's card. He had to have a current West Virginia miner's license. He had to undergo two day safety training in West Virginia and he had to fill out the employment paperwork in West Virginia. In this case, Mr. Yannis already had a current federal electrician's card, so that was a moot point. He picked up the state electrician's card in Ohio because West Virginia has reciprocity with their cards but not with Illinois' cards. So he got that about two weeks before he goes down to West Virginia. Now who asked him to go to West Virginia? Who suggested he go to West Virginia? That was where the job was. Okay. He began working for them in 1978, right? Perkins Hall in Illinois, yes. Did he ever work for anyone else? No, sir. So it's your position that because periodically he's quote-unquote laid off, every time he goes back to work he's working for a new employer? Well, my position is based on the Supreme Court case law, which was Youngstown, which specifically set a collective bargaining agreement. A union contract does not make an employment contract between the parties. That was followed again in U.S. Steel by the appellate court. So basically a union contract does not suffice as an employment contract. Was there a right of recall to the employment? Was that in Youngstown? That was not in Youngstown, was it? The right to recall is part of the collective bargaining? It doesn't say one way, but his job, his second job that he went to in Youngstown was based on the union that he was. It was all part of the collective bargaining union agreement in Youngstown. And that's what the Supreme Court basically said. In fact, the quote from that court is basically a union employee's right of recall stemming from a collective bargaining agreement does not create an employment contract between the employer and the employee, and that's at 432. Well, it may not create it. It doesn't mean it's terminated every time he is laid off, does it? No, but in the facts of this case, the evidence shows that once you are laid off, your benefits are done. You have nothing left to console except your recall rights. So you're saying that the layoffs mean he's no longer employed by the employer. Correct. Because if there's no mine that ever opens up, he's never going anywhere. So every time he goes to a new job site, it's a new contract, basically. Correct. What you're saying is the collective bargaining agreement is really basically a national agreement signed by certain coal companies? Yes, sir. That is correct. With the United Mine Workers? I'm sorry? With the United Mine Workers? That is correct, Your Honor. And then you're saying that with each individual company, there's a separate employment agreement? Correct. I mean, if Peabody Mine, for instance, was part of this, go to a Peabody Mine. This just happens to be Consul, and he went to another Consul mine, because their rights of recall show in that how they all work, whether it's with them or somebody else. Was he interviewed at the new job site? I mean, was he given an interview to be hired like you would normally get from a new employer? There was no testimony to that. It was more a matter of going in, filling out the paperwork. He had, obviously, the W-4s and all that that needed to be done. He had to read and review the Consul policy and procedure manual. There was no evidence that there was an actual interview. But there was evidence to the fact that he would have to show that he had done all of these condition precedents before he would be allowed to work. He had to give somebody the federal electrician's card. He had to take the West Virginia mining test, first and foremost, and pass that. And so that's probably all done in the HR department. Now, is there an actual interview where you sit down and meet someone? I don't know. It's not in the record. I don't know that. Counsel, in terms of your argument, in order for it to prevail, we really have to find that the layoff was the equivalent of a termination of his employment status. That's correct. And the facts actually show that in the case. The testimony of Mr. Chalkley and Mr. Hudson both said that. And even to some extent, so did Mr. Penn. I'm not putting my hands on it right now, but wasn't there testimony from the employer's representative that Mr. Yannis had not been terminated? That was actually a quote out of Mr. Dunham's brief, and what that did not include was the remainder of his testimony, which basically said he explained that when the employees were laid off, they were not Consul employees, they did not have benefits, they didn't have anything, all they had were panel rights. Being terminated and laid off were the same thing, because it's no mind to be recalled back to that person who was terminated and was never going to get a job again. And that's at T-176 to 179. He said it again at 180 and 182. When he's laid off, he's no longer an employee of Consul. Employment status, the determination of that would be a factual determination, true? Not necessarily. When you look at the case law, that's basically saying a union contract does not make an employment contract. Well, is it a de novo standard of review for this court? I think it could go either way. I think it's wrong under a manifest way or a de novo standard, but the higher standard of the manifest way, the evidence does not support what the Commission did here. I mean, there's three ways to find jurisdiction, and to some extent the Commission found all three of them, which makes no sense. The first one being that they incurred an occupational disease while working in Illinois, or the second one, his employment was principally located in the state of Illinois. Okay, let's say that's true. We still have a five-year statute of limitations. The case wasn't filed within the five years. Those two are out. So I don't know. And then you've got the Commission finding a date of disablement in June of 2008, which under 1F, we're now six years past the 1F rule. So those two prongs aren't going to work. Well, the five-year statute of limitations, that only works for you if we find that his employment terminated in Illinois. And if it hadn't, if his employment status was that of a continuing employee, then he was within the five-year statute of limitations, true? That is correct, but there's no way he could continue to be an employee in Illinois. The mine in Illinois closed. This is exactly like the facts in Youngstown. The guy worked at a factory. It closed. There was no chance of being rehired in Illinois. Same with the U.S. Steel case. There was no chance of that man going back to Illinois because his factory closed as well. And both of those people have recall rights stemming from a union contract, and the Supreme Court and this Court itself has said this does not create an employment contract. So even if you move beyond it and you look at what the last acts necessary to validate the contract, which is what you deal with when you're looking at an out-of-state contract, clearly the last four things that had to be done for Mr. Yannis to be an employee all occurred in West Virginia. I mean, we've had case law that came out of the appellate court saying if you just have to go and sign your paperwork before you start or you just have to go to this other state to get the job, those were last acts necessary to validate the contract. In this case, we have both of those. Plus we have, oh, by the way, you need to take a West Virginia mining test and pass it. And, oh, by the way, you also need to undergo this two-day safety training because we're not going to let you in the mine. We can't let you in the mine under West Virginia state law without it. So the last acts all occurred in West Virginia. And if you look at the facts in Youngstown and you look at the facts in U.S. Steel and Energy Erectors and Ford Aerospace and even Calgar, all of those are identical dealing with out-of-state. The only case that the Commission relied on was a case called Chicago Rawhide. And in that case, it made sense because there was an actual acceptance on the phone, which there wasn't in this case, even though the Commission said there was. But in Chicago Rawhide, there was. Plus the gentleman was being paid to drive to Minnesota for the job when he had the accident. So he was already on the payroll. Plus they were going to pay him for four hours' work whether he had a job there or not. So those facts don't even come close to what the other facts in the Supreme Court and the Appellate Court have put down regarding jurisdiction cases. And so I really don't understand why they would have relied on that instead of what is clearly the law in Illinois. And the most recent case that came down in jurisdiction, which was the Mahoney case that was the United Airlines case where the guy worked in Illinois, he transfers to Florida. The parties all agreed he was not laid off. It was a voluntary transfer. He worked one day in Illinois and the next day he was working in Florida. And in that case, they did find that there was a binding contract in Illinois because the contract had never been broken. Those are not the same facts that we have in this case or the other ones that I've mentioned. And for these reasons, we are asking this court to find that the commission decision is wrong as a matter of law with regard to two of the prongs and is wrong as a matter of law or against the manifest way to the evidence with regard to the out-of-state contract. Are there any further questions? I don't believe there are. Thank you. Thank you, Your Honor. Counsel, you may respond. Thank you, Your Honor. I don't have the site to the actual record, but if you look at page 44 of Mr. Hudson's deposition, 44 through 47, there's my cross-examination. It's in there. And basically, I spent some time trying to pin Mr. Hudson down as to whether there's a distinction between, in his mind, a laid-off employee and a terminated employee. And he goes to great lengths to try and preserve that distinction. But I specifically asked him, well, this lay-off notice that these employees were getting at the Lovebridge mine in West Virginia, does it say that you're being terminated? And I think he was forced to admit that it doesn't say that. And so what we have in this case, in Consol's mind, there is no difference if you're a laid-off employee and you're a terminated employee. Well, I think that's a distinction that, when you look at the contract itself, cannot withstand scrutiny. Why is that? The right of recall? Well, my first argument, Your Honor, is simply this. Whether they want to say that it's true. I mean, there wasn't an individual hiring offer and hiring with Mr. Janos. But there's no question that Consol agreed in the national agreement to call these people employees. Now, that's something they agreed. They didn't agree to some other kind of termination, some other kind of language, or some other kind of characterization. They are employees. Well, would that apply forever? Would that apply, you know, indefinitely? What about if the lay-off was for three or four or five years, and then the same facts happen? It goes down to Virginia. You would say that once he's an employee, he's always an employee forever? Well, certainly I'm not an expert on the agreement, Your Honor, but certainly there were certain, quote, former employees that are no longer entitled to benefits of the agreement. For example, if they retire or if they are further found to be not complying with the terms and conditions of the agreement. So you can lose your benefit. Oh, yeah, in some specific event would trigger the loss of the benefits. I think we understand that. But what about in most of these cases, and that's why we're here, it's not that clarified. Nobody gets a letter saying you're terminated. What if years go by and this thing happens and you're interviewed in another state? At what point does it become the functional equivalent of a new job? Well, as long as Mr. Yan is a member of good standing of the United Mine Workers, I take the position that he's an employee. It's the same company. Yeah, he's entitled to panel rights, and as long as he's entitled to panel rights, that agreement calls him an employee. Now, one of the points, Your Honor, that you were making, because I think the Maloney case is something that is a case that needs to be consulted here. True, in Maloney there was continuous uninterrupted employment with United Airlines, and I'm sure that the respondent will want to make that difference. But I'm reading from Maloney, which distinguishes Youngstown, and it said, this is what Maloney said, Supreme Court, the court concluded, however, that a new contract of employment was formed in Indiana following the termination of employment relationship in Illinois. In other words, that employee, that claimant had to go over to Indiana, submit to a new interview, and it was clear from the context of the opinion in Youngstown that the Indiana employee, employer, or the site of employment could have rejected that employee as a particular employment because an interview had to be submitted to. Noting the claimant was interviewed for employment, Indiana underwent a pre-employment physical examination in Indiana. Not true here. The physical wasn't a pre-employment physical. It was a checkup physical, but that occurred in Illinois. Received a new employee identification number. Not true. In this case, my client had the same number with consult throughout his employment. Joined a different local of the union. Not true here. And was placed in a position comparable, was not placed in a position comparable to his employment in Illinois. Not true here. So you're saying Youngstown's not controlling this? I'm saying Youngstown not only is not controlling, but for the very reasons set out by the Supreme Court in Maloney, it doesn't have anything to do with this case. And that seems to be the case that the respondent is hanging his head on. And for every factor that the Supreme Court thought was important in Youngstown for reaching a holding that the union employment contract was new employment in Indiana. Every factor cited by the Supreme Court in Maloney is a factor that points in favor of Yanez and is overwhelming evidence in our position, Your Honor, that both the circuit judge and the commission got this case right. Yanez remained a member of the LOPA. I think he's retired right now. No, no, but while he was working in West Virginia, he remained a member of the LOPA in Illinois? I don't know. I'm not sure, Your Honor. That's what I thought I heard. That fact is in the record. Okay, but that's what I thought I heard you say. Well, I don't think there's any evidence whether or not he actually was forced to join the LOPA in West Virginia or not. But that certainly was a factor that the court in Youngstown stressed. Referred to as a transfer, though. If it had truly been a termination, and I'm just playing the devil's advocate here, but if there had been an actual termination of employment in Illinois, would Mr. Yanez have been entitled to certain severance benefits, termination benefits? I ask to assume, Your Honor, that Mr. Yanez was terminated in a manner that was consistent with the collective bargaining agreement, so that he had no right to grievance or anything like that. Should I assume that's the case as well, Your Honor? Well, where I'm going with this is, in his mind, if he had been terminated, was there another avenue that he would have proceeded? Were there benefits out there that he would have been entitled to that he would have sought to receive? I'm not an expert in that agreement, but I think its only remedy, I believe, but I'm not absolutely certain about it, is that he can file a grievance if he thinks the termination is unfair. For example, if he was found, if they did a drug test and he failed the drug test. Yeah, and I'm not talking about the termination itself, but if there were any sort of pension benefits that he could avail himself of, or medical that he would have continued on with. If there was basically a split in the road, where if it was a continuing employment relationship, such as you're arguing here, he would have gone this way. If it was a termination, he would have done these things. I'm not sure, Your Honor. There's nothing that clear-cut here. I don't think we have those facts on the record. Okay. Counsel, let me approach it from a different perspective. I understand your argument is, of course, if he's working for the employer, that the job ends, he's laid off temporarily, he hasn't been terminated, he's still working for the employer. But at what point or what factors, then, would we look to determine that the person was terminated? I mean, at what point does somebody lose the employment with the employer? What would trigger that, in your mind? If he would no longer be considered an employee under the collective bargaining agreement. That would be your controlling factor? Yes. I feel like I'm being marched over a cliff here, but I don't think I have to draw the line right there at the edge of the cliff. Okay. Well, don't tip over, then. Okay. How about becoming employed by another, still a member of the collective bargaining agreement, another employer? I think certainly if he took employment with a non-union line, it's my understanding that that would be a cause for him being terminated, you know, losing any benefits under that agreement. I mean, as a fallback position. Well, but let's change that just a little bit. Let's say that he takes a position with Peabody. Okay. And he shows up to mine at Peabody. Okay. Is he no longer a consul employee? Right. He's still covered under the collective bargaining agreement. Still a United Mine worker. Possibly even in the same local. I'm being facile in my response. Yeah, be careful. Don't go over the cliff. Yeah, a number of years ago, I actually represented a black coal miner who was appointed by Judge Foreman and was working for both Consol and Freeman. And he wound up destroying his health that way, but, you know, it's possible to do it. And he worked for both companies and had aggravated both of them, but they looked at the agreement and he had a right to do it. So I guess I would take the position that he still had that potential right to be recalled, and as long as he can make both job sites, work both shifts, he would have a right to do it. And that would be the position I would take. There's also, I think there's ample evidence in here that even if he didn't have his principal employment, hadn't continued from 1978 all the way through, that the new hire, a contract for employment was formed in Illinois. There's ample evidence to base your holding in a firm on that grounds. You know, when I respond, the Consul keeps talking about all these things that happened, that had to happen or allegedly had to happen in West Virginia. Recently I hired a paralegal. I said, look, as a condition of working for me, you have to become a notary. And I asked her because she said it's possible, she didn't know, but when she was on her way to St. Louis at the airport, she sent in the application for the notary. And I have a couple of cases going on in Missouri. Possible I could ask her to run in here and form you and deliver some documents in Cape Girardeau when she's injured while in my employment. I think that it's the Consul's position that since the last act necessary for my employment was her becoming a notary and that she mailed that from St. Louis and then she was injured while out in St. Louis, while in Cape Girardeau, that there's no jurisdiction in Illinois. The cases don't take that position. There was an agreement that was formed between the parties here in Illinois. He passed all his physical. He was told that there was a job available. He exercised his panel rights. He did his physical and all of that. It is true that he had to perform some other things, W-2s, and he had to get his electrician's card renewed, just like the notary situation. But it was understood, Your Honor. Well, just in terms of the very basics then, offer and acceptance, the offer of the employment in West Virginia was made by telephone, correct? Correct. Is there any evidence in the record that your client accepted in that phone call? Were there words spoken by your client, I accept or I will be there? We, in our brief, set forth my client's, which could be accepted and should be accepted by this Court in exchange between Mr. Hudson and my client. And I think the context from the conversation was he indicated to Mr. Hudson, yes, he's going to accept, he's going to be out there and he wants that employment and he's going to be there. Was Mr. Hudson the person that your client always spoke with in terms of these other jobs that he had taken? No, I don't think so. Was it always by telephone? We don't know what happened out in Utah as to how that occurred. We know that he exercised his panel rights and he went out there and he did it. But the facts, my bite is on here so I better wrap it up, but one of the points I think the Commission made, which I think is a very strong equity in my client's favor, is the record indicates that he started experiencing breathing problems and the like while he was in Illinois, again in 1999. And so this diagnosis of Dr. Cohen of coal worker's pneumoconiosis really began to manifest itself as a result of what would be in excess of 20 years of coal mine employment in Illinois. And I think that's a very important equity saying that Illinois should govern his rights to benefits because of the coal worker's pneumoconiosis diagnosis by Dr. Cohen. Thank you, Your Honors. Thank you, Counselor. Counselor, you may reply. Your Honors, with regard to some of the argument that's been made by Mr. Dunham and the questions that have been asked, how can you be terminated if you have panel recall rights? We're trying to split hairs here. In all honesty, unless the guy gets caught stealing and actually is terminated, every single one of these people is subject to recall and that's pursuant to the contract. And while Mr. Dunham says we all need to be looking at what Mahoney says, United Airlines case, they specifically said a layoff and recall of an employee constitutes a new employment contract. That's our Supreme Court in 2006. And they were also addressing Youngstown, basically that the right of recall stemming from the collective bargaining agreement does not create an employment contract. Those are our two Supreme Court cases and we can't ignore them. Plus we have all the appellate court cases where they're saying here's your last act and you need to do all of these things. With regard to Mr. Dunham's statement that nothing changed, the employee number didn't change. They used Social Security numbers. They're not going to change. His seniority did go down. He basically starts back at zero. He loses all of his prior mine seniority except for with regard to vacations, but basically for time off and all that stuff that you would use it for in a mine, the hours, which shift you'd have, that's all gone. And with his hypothetical, he gets a secretary. She could work as a secretary before she became a notary. He was paying her to go to Missouri. We don't have that here. He was not paid to go to West Virginia. Mr. Yanez absolutely positively could not, based on his testimony, based on Mr. Shockley's testimony, based on Mr. Hudson's testimony, and based on the statutes of West Virginia, could not work in that mine until he completed the conditions precedent. He might have been able to do it without the employment paperwork. He could not do it without passing the West Virginia minors exam. He could not do it without taking the two-day safety training. Those were the last acts necessary to validate the contract. Pursuant to Mahoney, pursuant to Youngstown, pursuant to U.S. Steel, Ford Aerospace and Calgar, all of these cases say the same thing. And to try and change the facts so that we can find that he has jurisdiction here, it doesn't work. You're either laid off or you have a continuing contract. He was laid off, so he's not going to get the benefit of continuing contract in Illinois, which means we have to see what the last acts were. And very clearly, based on everybody's testimonies, those acts occurred in West Virginia. And that's why we're asking the commission decision to be vacated and reinstate the arbitrator's decision. Are there any other questions? Thank you, counsel. Thank you, counsel, both, for your arguments in this matter. This report will be taken under advisement, and a written disposition will issue in due course. We'll wait just a few seconds before we call the next case. Thank you.